Talbot et al. v. Rountree.

---

## Sarah Talbot et al.
### v.
## Elizabeth C. Rountree.

1. Will—Construction—Legacy—Upon what property charged. —The first clause of testator's will, after devising to his wife the use, during her life, of all his real estate, concluded: " Also all my household and kitchen furniture, goods, chattels, moneys and effects belonging to me at the time of my death, to have the said personalty as her own, with authority to sell and dispose thereof as she may deem best, but subject to the payment of the bequest to E. hereinafter named." The bequest to E. was of such a sum as would produce an annual income during her life of $150. *Held*, that this specific bequest was not a charge upon the real estate; but it appearing that the widow had come into possession of sufficient personal estate to make provision for its payment, and had elected to take under the will, it was not error to render a personal decree against her for the payment of the amount due on the bequest, and to enforce future compliance with the bequest, the court might order the widow's interest in the lands sequestered.

2. Residuary legatee—Sequestration of lands.—The testator's daughter was made residuary legatee, after the death of the widow, of all the lands and personalty. *Held*, that it was competent for the court to make the payment of this legacy a charge upon all the interest of the widow, but that

the court erred in ordering a sequestration of the lands for the payment of the specific legacy to E. for a longer period than the life of the widow. By the terms of the will, the residuary legatee will become charged with the payment of this specific legacy, but until she comes into possession this liability will not attach.

ERROR to the Circuit Court of Washington county; the Hon. GEORGE W. WALL, Judge, presiding.

Mr. S. L. BRYAN and Messrs. J. A. & A. L. WATTS, for plaintiffs in error; that the specific legacy was to be paid out of the personal estate, and that not being sufficient, the legacy abated, cited Heslop v. Gatton, Ex'r, 71 Ill. 528; Redfield on Wills, title, Abatement of Legacy.

Mr. P. E. HOSMER and Mr. JAMES M. ROUNTREE, for defendant in error; that the specific legacy became a charge upon the real estate, cited 2 Redfield on Wills, § 208; Lapham v. Clapp, 10 R. J. 543; Willis v. Watson, 4 Scam. 64; 1 Scam. 276; 4 Gilm. 329; 53 Ill. 325; 6 Ill. 45.

Upon the rule for construction of Wills: Smyth v. Taylor, 21 Ill. 296; Boyd et al. v. Strahan et al. 36 Ill. 355; Siegwald v. Siegwald, 37 Ill. 430; Brownfield v. Wilson et al. 78 Ill. 467.

ALLEN, J. This was a bill of chancery, filed by defendant in error, alleging that H. H. Talbot died testate, and, among other bequests, bequeathed to defendant in error, during her life, the sum of $150.00 yearly, to be paid in installments of $75.00, semi-annually; that by his will the testator ordered that a sufficient sum be placed at interest, by the executor or the wife of deceased, as they might agree, to bring the sum of $75.00, half yearly, to be placed to the credit of defendant in error in the bank; that the bequest was by said will made a charge against the real estate of deceased; that the executor has paid over to widow of deceased under the will all the personal estate; that the widow and executor have failed and refused to place at interest a sufficient sum to provide for payment of bequest to defendant in error; that there is due defendant

Talbot et at. v. Rountree.

in error the sum of $75.00, which by the will fell due July 1st, 1877; and charges that the widow is aged, and the residuary legatee, Emily Brown, is managing her affairs, and will waste the whole estate if not restrained.    Bill prays judgment for the installment due, and asks for the appointment of a receiver to collect rents of real estate, to raise a fund to be placed at interest for benefit of defendant in error.

Plaintiffs in error answered and denied all material allegations in bill; also insisting that the bequest to defendant in error was not made a charge on real estate, but was a specific charge upon the personal estate, and claimed that if the personal estate was not sufficient to pay the bequest, it failed.

The court rendered a decree against Sarah Talbot, widow, and George W. Akin, executor, for $76.50, and ordered an execution to issue for that sum and costs, against Sarah Talbot, and that George W. Akin, executor, pay in due course of administration; and further decreed that said Sarah Talbot and George W. Akin, executor, pay into the Washington County bank a sum sufficient to raise at semi-annual interest the sum of seventy-five dollars, or that they deposit notes secured by deed of trust on real estate to an amount sufficient to raise from interest thereon the sum of $75.00, semi-annually, to be paid to defendant in error; and that in default to do so in 30 days, that the sheriff of Washington county sequestrate all the real estate of said Sarah Talbot (except the place on which she resides), or so much thereof as may be necessary to bring from the rents thereof the sum of $75.00 semi-annually, and to collect the rents and pay the same in, or deposit the said sum on or before the first days of January and July of each year, during the natural life of the complainant (defendant in error), or during the refusal of the said George W. Akin and Sarah Talbot to create and establish such fund; said amount so deposited to be subject to the order of said complainant (defendant in error).

The controversy in this case grows out of the construction to be given to the will of H. H. Talbot, the husband of one of the defendants to the bill, Sarah Talbot, and the father of defendant in error, and of Emily Brown, plaintiff in error.

The provisions of the will under which the controversy arose are as follows:

"*First.* I give, devise and bequeath to my wife, Sarah Talbot, during her natural life, the possession, use, control, rents, issues and profits of all my real estate, now owned by me, and hereinafter described, so far as the same remains undisposed of at my death, and any real estate hereafter acquired by me, and owned by me at the time of my death; *also,* all my household and kitchen furniture, goods, chattels, moneys and effects belonging to me at the time of my death; to have the *said personalty* as her own, with authority to sell and dispose thereof as she may deem best, but subject to the payment of the bequest to Elizabeth C. Rountree hereinafter made.

"*Second.* I give, devise and bequeath to my daughter, Elizabeth C. Rountree, in fee simple, lots No. forty and forty-two in Barger's addition to Nashville, and the sum of one hundred and fifty dollars yearly, so long as she lives, to be paid her in half-yearly installments of seventy-five dollars each; to be paid her at the Washington County Bank, in Nashville, Illinois, on the first days of January and July, promptly, by my wife or executor, *as they may agree.* And to provide for the payment of this bequest I hereby direct that a sum sufficient to bring that amount at least, be deposited in said bank, or loaned out and well secured; and the interest arising from said deposit or loan be placed to the credit and subject to the order of my said daughter to the amount of one hundred and fifty dollars yearly, as above.

"*Fifth.* I give, devise and bequeath to my daughter, Emily Brown, in fee simple, after the death of my said wife, lot No. eight, and east third of the south two-thirds of lot No. six, both in block No. four, in the Town of Nashville; and all the residue of my goods, chattels, household and kitchen furniture, moneys and effects remaining unexpended after my wife's death, subject, however, to the payment every six months of the bequest to Elizabeth C. Rountree, during her natural life, as hereinbefore provided for."

The first question that is presented by plaintiff in error is: Does this will make the bequest to defendant in error a charge

Talbot et al. v. Rountree.

upon the real estate of the testator?   After devising to his wife,
Sarah Talbot, during her natural life, the possession and con-
trol, issues, rents and profits of all the real estate that he might
own at his death; also all household and kitchen furniture,
goods and chattles, moneys and effects at his death, to have
said personalty as her own, with authority to sell and dispose of
as she might deem best, "but subject to the payment of the
bequest to Elizabeth C. Rountree hereinafter made." Now,
what is it that is subject to the bequest of Elizabeth Rountree?
Is it the real estate devised to the widow during her life, the
rents and profits issuing out of the real estate? or is it the per-
sonally that the widow takes, that is to become subject to the
bequest of Mrs. Rountree? In the construction of wills we
must give to their language the primary acceptation of the word
used: "for we are told that a testator is always presumed to use
words in which he expresses himself according to their primary
acceptance." Wigram on Wills, p. 55. Unless from the con-
text of the will it appears that he used them in some other
sense. Now, by the terms of this clause of the will, Mrs. Tal-
bot was to have the personalty, subject to the bequest to Mrs.
Rountree. The word personalty has a strict and primary sense,
and is applied to chattels personal, things movable, as contra-
distinguished from things real or attached to the realty. In
construing this clause of the will, then, we cannot reject the
word personalty used by the testator, for no word in a will
can be rejected and another substituted for it, without the clear-
est certainty that it was the intention of the testator to use the
word in some other sense. Redfield on the Law of Wills, p.
471–2.

We fail to find anything in the context that warrants a dif-
ferent interpretation, or that the testator intended to use the
word personalty in any other than its primary sense, but we
do find in the context that which strengthens us in the opinion
that it was only the bequest of the personal estate that was to
be subject to the bequest to Mrs. Rountree.

The second bequest gives to Elizabeth C. Rountree lots 40
and 42, in Barger's addition to Nashville, in fee simple, and
the "sum of $150 yearly, so long as she lives, to be paid her in

half-yearly installments of $75.00 each, to be paid at the Washington county bank, &c., by my wife or my executor, as they may agree." Now, the executor only had to do with the personalty. The real estate was to go to the widow during her life and to the devisees named in the will at her death.

Again, in the 5th clause in the will, the testator devises and bequeaths, after the death of the widow, lot 8 and $\frac{1}{8}$ of S. $\frac{2}{3}$ of lot 6, block 4, in Nashville. "The residue of his goods, chattels, household and kitchen furniture, moneys and effects, remaining unexpended after my wife's death, subject, however, to the payment every six months of the bequest to Elizabeth Rountree, as hereinbefore provided."

Taking the three clauses of the will together and giving them a construction consistent with each other, we are clear in our conviction that it was not the purpose of the testator to make the bequest to Mrs. Rountree a charge upon the real estate, but that it was his purpose to provide that out of the personal estate provision should be made to secure to her this $150 annually, and that it was the duty of the executor to see that done as directed in the will, and that Mrs. Talbot, the widow, in electing to take under the will and in receiving the bequest of the personalty, became chargeable with the bequest to Mrs. Rountree during her life, and that Mrs. Brown, as the residuary legatee of the personalty, will take it subject to the payment of the bequest. This view of the question harmonizes with the other provisions in the will. This leads us to a consideration of the decree rendered by the Circuit Court herein. The court found from the evidence that the widow had received from the executor $1,300, and from rents from real estate $2,900. Plaintiffs in error insist that the widow could not in any event be held liable to defendant for more than the interest on $1,300, inasmuch as that was all from the personal assets that she received from the executor. The record shows that the executor was made a witness and testified in the cause below. It is possible that something in his testimony may have led the court to conclude that the widow had received more than the $1,300, for which she was chargeable.

The records show that $2,918.25 was received by the widow

Talbot et al. v. Rountree.

from the executor for rents from real estate. Whether any portion of this rent had accrued and was due at the death of testator, or whether it was rents that accrued after his death, is left to mere conjecture. All rents due at the date of the testator's death would go to the executor as personalty, and would form a part of the personal estate of the testator, which by the terms of the will, would be subject to the payment of the bequest to Mrs. Rountree. Rents that accrued afterward would go, under the will, directly to the widow, and would not be subject to this bequest. From the fact that the executor was handling the rents, and in the absence of any proof that he was acting as the agent of Mrs. Talbot in collecting them, and the fact that he charged himself with them, and credited himself when he paid them over, and that he settled in the County Court upon this basis, would indicate that the rents had accrued before the death of the testator, and from the record we take that view. If this view is correct, then Mrs. Talbot has from the personal estate of the testator an abundant sum out of which she may secure to defendant in error the $150 per annum, and becomes liable personally for it, and it was not error for the court to so find and so decree.

The bill charges that the executor and the widow were in default in the payment of one installment of $75.00, and the court find that charge to be sustained by the evidence, and for that sum and the accrued interest, rendered a personal decree against the widow for that installment and the interest. It is insisted by plaintiffs in error that the court had no right to render a personal decree against Mrs. Talbot, but we believe that, having accepted under the will, and having taken the personalty, she was personally liable to defendant in error for whatever was due and unpaid.

The bill charges a refusal by Mrs. Talbot and the executor to secure to defendant in error her bequest to so place a sufficient sum at interest as to raise $150 a year, for the use of defendant in error. The answer admits that this has not been done. The record shows the widow, Mrs. Talbot, had it in her power to do this; that she failed to do so. A court of equity has power to compel her to comply with the conditions upon which she

enjoys the bequest in the will, and to accomplish this, has power to render against her such decree and sequestrate her property, and the rents, issues and profits of any lands to which she is entitled, either in fee or for life, to the end that defendant in error may have that to which the will entitles her. Revised Statutes, Chap. 22, § 42. But in doing this, due regard must be had to the rights of others under the will. Since the will only makes the payment of this bequest or legacy a charge on the personalty, a court of equity would not be authorized to charge its payment upon any of the lands beyond the natural life of the widow, Mrs. Talbot. It could not become a charge upon the lands which go by the will to Emma Brown, after the death of her mother, nor to any other lands which are devised by the will to other devisees upon the death of Mr. Talbot. By the terms of the will the residuary legatee, Mrs. Brown, will become personally liable for the payment of the bequest as the legatee, but until she comes into possession, this liability will not attach. It was competent for the court to make the payment of this bequest a charge upon whatever interest Mrs. Talbot had in the lands, and to sequestrate the rents, issues and profits to an extent sufficient to secure the payment of the bequest during the life time of Mrs. Talbot; but upon the death of Mrs. Talbot these lands go, under the will, immediately to the other devisees in the will, and to sequester lands devised to Sophia Brown (and Ida Rountree, by the 3d and 4th clauses in the will), after these lands vest in them upon the death of Mrs. Talbot, would be to violate the provisions of the will by which these lands and the rents, issues and profits all go to them.

The decree of the Circuit Court makes the sheriff a receiver, and directs him (in the event that the executor and widow fail to make the provision required by the will) to sequestrate the rents of all the lands owned by the widow (except the place where she resides), and to collect the rents and pay to complainant in the bill (defendant in error) $75.00, or deposit the same to her credit in bank on the 1st days of January and July in each year during her natural life. This decree would make the bequest a charge upon the lands devised to Mrs. Talbot beyond her natural life, if defendan in error survived her, and throw

the burden of this bequest upon whoever took the lands under the will at the death of Mrs. Talbot. This would, in our judgment, violate the provisions of the will. We believe the Circuit Court erred in decreeing a lien upon the lands, and sequestrating the rents and profits beyond the natural life of Mrs. Talbot, and for this reason we reverse the decree of the Circuit Court.

Reversed and remanded.